**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

MARY SUE GREGORY,

                Plaintiff,

vs.                                                                                         CASE NO.  5:09-cv-517-Oc-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

## ORDER AND OPINION

      This case is before the Court on Plaintiff's Complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her claim for disability benefits.  Plaintiff filed a memorandum in support of the Complaint (Doc. #18) and Defendant has filed a memorandum in support of the Commissioner's decision to deny disability benefits. (Doc. #19).   Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated March 25, 2010. (Doc. #17).   The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

      The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of

the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations. Accordingly, the instant matter has been decided on the written record. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

## I. Procedural History

In the instant action, Plaintiff filed an application for DIB on June 18, 2003, alleging disability commencing on January 5, 2001 due to fibromyalgia, back pain, morton neuromas, osteopenia, and a broken foot. (Tr. 13A, 58, 687-88). Plaintiff's insured status expired on June 30, 2001, so she was required to prove disability prior to that date. (Tr. 382-83). Plaintiff's initial application was denied, as was her request for reconsideration. (Tr. 21-24, 28-29). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 27). On July 12, 2005, ALJ James R. Ciaravino conducted a hearing. (Tr. 281-311). On January 26, 2006, ALJ Ciaravino issued an unfavorable decision. (Tr. 13A-19). The Appeals Council denied review, rendering the ALJ's decision final. (Tr. 4-6). Plaintiff then appealed to this Court.[1] On September 24, 2008, this Court reversed and remanded the Commissioner's decision for further proceedings. (Tr. 390-409).

On remand, a supplemental hearing was held on February 11, 2009 via video hearing before ALJ Philemina M. Jones. (Tr. 676-718). On May 22, 2009, ALJ

---

[1] Case No. 5:07-cv-19-Oc-GRJ.

Jones issued an unfavorable decision. (Tr. 382-89). On November 17, 2009, the Appeals Council denied review, rendering the ALJ's decision final. Plaintiff then filed the instant appeal. (Doc. #1.)

## II. Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §404.1520. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the

conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(per curiam)(internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(per curiam)("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'")

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)(per curiam.) "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560, *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)(stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings.)

### III. Statement of the Facts

Plaintiff was fifty six (56) years of age on the date her insured status expired. (Tr. 384). She has a high school education and attended cosmetology school. (Tr. 681). Plaintiff has worked as a bakery worker, retail sales clerk, hairstylist, and electrologist. (Tr. 45A, 681-84). After reviewing the entire record and Plaintiff's testimony at the hearings, the ALJ found Plaintiff has the severe impairments of fibromyalgia, degenerative joint disease of the cervical and lumbar spine, migraines and right foot fracture. (Tr. 384).

The relevant time period for this appeal is very narrow – i.e., from January 5, 2001 (alleged onset date) through June 30, 2001 (date last insured). During this time period, Plaintiff was treated at Ocala Family Medical Center on two occasions for complaints of migraine headaches, pain in her neck, shoulders and hips and constant fatigue. (Tr. 127, 129-30). She also was treated by podiatrist, Michael H. Rotstein, D.P.M. for a broken right foot. (Tr. 213-16). Subsequently, and well after her date last insured, Plaintiff was treated *inter alia* by rheumatologist, Stephen Bookbinder, M.D.,[2] orthopaedic surgeon, Troy D. Lowell, M.D.,[3] and family care physician, Richard Qi Li, M.D.[4] The undersigned will discuss the relevant medical records as necessary.

## IV. Analysis

In her RFC analysis, the ALJ found that Plaintiff's impairments did not become disabling prior to June 30, 2001, the date of last insurability. Plaintiff argues that in making this determination the ALJ failed to properly consider the opinions of two of Plaintiff's treating physicians, Dr. Bookbinder and Dr. Li; and that the ALJ failed to properly consider Plaintiff's right foot fracture.

---

[2] While the ALJ states that Dr. Bookbinder treated Plaintiff since at least 2000 (Tr. 387), the record includes treatment notes only from January 2003 to May 2003 (Tr. 160-65) and June 28, 2005 to November 2, 2006. (Tr. 538-43).

[3] Plaintiff saw Dr. Lowell for the first time on April 10, 2003. (Tr. 152-54).

[4] Based on the records before the Court, it appears that Dr. Li did not begin treating Plaintiff until July 2007, more than six years after Plaintiff's date last insured. (Tr. 614-41).

5

### A. The ALJ properly evaluated the opinions of Plaintiff's treating physicians

The only opinion evidence regarding Plaintiff's condition prior to her date last insured were the opinions of Dr. Bookbinder, Plaintiff's treating rheumatologist and Dr. Li, her treating family care physician. Both physicians, who treated Plaintiff years after her date last insured, opined that Plaintiff was limited to less than sedentary work functions prior to June 30, 2001. The ALJ accorded "limited weight" to these opinions. (Tr. 387-88). Upon a review of the ALJ's decision, as well as an examination of the record as a whole, the Court finds that the ALJ properly considered the opinions of these treating physicians and the ALJ's finding is supported by substantial record evidence.

Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards*, 937 F.2d at 583. A treating physician's opinion on the nature and severity of Plaintiff's impairments is given controlling weight if it well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if "it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583. "The weight afforded a physician's conclusory statements depends upon the extent to which they are

supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986)(*per curiam*); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)(finding that a treating physician's opinion that claimant was totally disabled was properly discounted because "it was not supported by objective medical evidence and was merely conclusory.")

In a letter dated December 15, 2005, Plaintiff's counsel confirmed the details of her December 1, 2005 conversation with Dr. Bookbinder. (Tr. 667). Dr. Bookbinder signed the letter acknowledging that the letter accurately portrayed their conversation. *Id.* Specifically, Dr. Bookbinder confirmed that "severe and constant neck pain from March 2001 and fatigue and inability to sustain even sedentary employment secondary to C-spine degenerative disease is highly certain within a reasonable medical certainty because cervical disc disease can take years to develop." *Id.* He further confirmed that his opinion was consistent with the March 30, 2001 and June 13, 2001 treatment notes from Dr. Panzer. *Id.* On May 4, 2006, in a letter "to whom it may concern" Dr. Bookbinder noted that Plaintiff has been suffering from cervical radicular pain since the early 1980s and that her symptoms and x-rays have been consistent throughout with upper extremity radicular pain. (Tr. 540).

On December 3, 2008, Dr. Li completed a Functional Capacity Evaluation, limited specifically to the period prior to June 30, 2001. (Tr. 610). He opined that

prior to June 30, 2001, the most reasonable lifting and/or carrying expectation during a normal work day was 10 pounds occasionally to 5 pounds frequently. *Id.* Plaintiff could sit for 30 minutes at a time; stand or walk for 15 minutes at a time; and she would need to periodically alternate sitting and standing. *Id.* He noted limitations in the areas of pushing/pulling movement, climbing, gross manipulation, fine manipulation, bending or stooping movements, and reaching. *Id.* Dr. Li explained that these findings were based on Plaintiff's fibromyalgia and chronic neck pain. *Id.*

In discounting the opinions of Dr. Bookbinder and Dr. Li, the ALJ noted that their opinions were retrospective. (Tr. 388). That these opinions were rendered after Plaintiff's date last insured, is not a proper reason to reject them. *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)(superseded by statute on other grounds, as recognized in *Hand v. Heckler*, 761 F.2d 1545, 1548 n.4 (11th Cir. 1985)). The opinion of a treating physician is still entitled to significant weight notwithstanding that he did not treat Plaintiff until after the relevant determination date. *Id.*

However, in addition to noting that the opinions of Dr. Bookbinder and Dr. Li were retrospective, the ALJ also discounted their opinions because they were not consistent with the objective medical evidence. (Tr. 388). Specifically, the ALJ noted that the evidence showed only intermittent acute symptoms through June 30, 2001. *Id.* This finding is supported by substantial record evidence.

The ALJ acknowledged that Plaintiff was treated for fibromyalgia during the relevant period but concluded that the evidence failed to demonstrate chronic acute symptoms associated with this disease. (Tr. 387). Plaintiff was treated for headaches and fatigue in 1999. (Tr. 258). Plaintiff began treatment at Ocala Family Medical Center on June 1, 2000 but did not mention any headaches until March 30, 2001, when she reported severe migraine headaches with some nausea and vomiting. (Tr. 129-30). Treatment records do not show complaints of further headaches until November 5, 2001. (Tr. 124). Likewise, Plaintiff did not report any "fibromyalgia-type" pain until June 13, 2001 when she reported pain in her neck, shoulders and hips and constant fatigue. (Tr. 127). Dr. Panzer did not diagnose fibromyalgia nor did he note any functional limitations. *Id.*[5]

The ALJ correctly noted two additional flares of fibromyalgia symptoms after Plaintiff's date last insured. On July 9, 2001, Plaintiff complained of pain in her neck radiating across both shoulders and across the anterior chest; on examination she had significant muscle spasm throughout the paravertebral musculature; but Dr. Panzer did not identify any functional limitations. (Tr. 125). Four months later, in November 2001, Plaintiff presented with complaints of daily headaches and neck, shoulder and back pain. (Tr. 124). On examination, Plaintiff had positive tender points and for the first time Dr. Panzer diagnosed "fibromyalgia exacerbation" but did

---

[5] Dr. Panzer's March 30, 2001 and June 13, 2001 treatment notes are the same medical records upon which Dr. Bookbinder relied in opining that Plaintiff could not perform even sedentary work prior to June 30, 2001.

not identify any functional limitations. (Tr. 124-27). Plaintiff did not see Dr. Panzer again until August 2002, when she reported low back pain after her back snapped and popped while she was brushing her teeth. (Tr. 121). Plaintiff did not report any fibromyalgia-type symptoms.

With respect to Plaintiff's degenerative joint disease in her low back and neck, the ALJ noted that it did not become acute until after her date last insured. (Tr. 387). In 1998, Plaintiff saw Karl W. Kumler, M.D. for complaints of back pain, which appeared to be resolved by August 1998 (more than two years before Plaintiff alleged onset date). (Tr. 97-98). Dr. Kumler noted an x-ray of Plaintiff's back was within normal limits; and that while an MRI showed some degenerative disc changes, there was no pressure on Plaintiff's nerve roots. (Tr. 98).

Plaintiff did not report any back or neck pain to Dr. Panzer until December 12, 2000, when she injured her low back lifting a box weighing approximately fifty pounds, and Dr. Panzer put her on bed rest. (Tr. 138). An x-ray of the lumbar spine was negative for fracture, dislocation and compression. *Id.* Only three days later (and less than one month before her alleged disability onset date), Dr. Panzer found that Plaintiff's back pain was resolving and cleared her to resume normal activities. (Tr. 139). Plaintiff did not report neck or back pain again for another six months, until June 13, 2001. (Tr. 127).

The ALJ also noted that when Plaintiff was seen by orthopaedist Troy D. Lowell, M.D. in April 2003 (almost two years after her date last insured) she reported that neck pain was more of a problem; that her current problem began six months ago; and that the symptoms were part of an ongoing pattern of intermittent attacks over a period of more

than 3 years and gradual in onset. (Tr. 152). Plaintiff also reported that she had experienced some low back pain over the past several months but that it had since resolved. *Id.* Dr. Lowell reviewed an MRI of the cervical spine and diagnosed herniated nucleus pulposus at C4-5. (Tr. 154). He counseled Plaintiff on surgery and more conservative treatment options. *Id.*

Accordingly, the ALJ could reasonably conclude that the opinions of Dr. Bookbinder and Dr. Li – that Plaintiff could not perform even sedentary work prior to June 30, 2001 due to fibromyalgia and chronic neck and back pain – were not supported by the objective medical evidence.[6] Because the undersigned concludes that the ALJ properly evaluated the opinions of Dr. Bookbinder and Dr. Li as treating physicians and articulated good cause for not accepting their opinions regarding Plaintiff's functional limitations, this issue does not require reversal.

Next, Plaintiff argues that this is "clearly a case where the claimant has significantly declined over time so that onset is critical" and the ALJ erred in "failing to obtain the opinion of a medical expert as to onset if she were going to discredit the only two opinions of record." (Doc. #18 at 8-9). As discussed above, the ALJ's

---

[6] In rejecting Dr. Bookbinder's opinion, the ALJ also noted that his opinion was inconsistent with Plaintiff's extensive traveling during the latter half of 2001 which suggested she was capable of long periods of sitting. Tr. 388. This statement offers little, if any support for the ALJ's decision to discredit Dr. Bookbinder because the ALJ failed to note that Plaintiff testified at the first hearing that she traveled in a truck with her husband and due to health problems she would lay down in the back seat during most of the traveling (Tr. 306); and that while she rode in a car to Ohio with her husband, it was very difficult for her and sometimes she would not go with him. (Tr. 693).

11

decision to discredit the opinions of Dr. Bookbinder and Dr. Li was supported by substantial record evidence. Contrary to Plaintiff's contention, the ALJ did not improperly substitute her own opinion for that of the medical professionals. The ALJ did her duty. She considered the medical and other evidence and assessed Plaintiff's RFC based on that evidence. 20 C.F.R. §§404.1527, 404.1545, 404.1546.

Moreover, that the ALJ rejected the only opinion evidence regarding Plaintiff's condition prior to her date last insured did not automatically trigger some obligation for the ALJ to further develop the record. Pursuant to SSR 83-20, an ALJ may be required to obtain a medical advisor if the evidence is inadequate or ambiguous as to whether Plaintiff was disabled prior to her date last insured. *See e.g., Walton v. Halter*, 243 F.3d 703, 709 (3rd Cir. 2001) (medical advisor required where "[a]dequate medical records for the most relevant period were not available;" the "impairment was a slowly progressive one and the alleged onset date was far in the past"); *Grebenick v. Chater*, 121 F.3d 1193,1201 (8th Cir. 1997)(whether a medical advisor is required turns on "whether the evidence is ambiguous regarding the possibility that the onset of [the claimant's] disability occurred before the expiration of her insured status" and whether "a retroactive inference is necessary"); *McManus v. Barnhart*, 2004 WL 3316303, at *6-7 (M.D. Fla. 2004)(further development is required only when "the medical evidence during the insured period is inadequate or ambiguous.")

Here, the medical evidence during the insured period was neither inadequate nor ambiguous. While Plaintiff's condition may have become progressively worse over time, the ALJ had sufficient medical evidence upon which to base her determination that Plaintiff was not disabled prior to June 30, 2001. That Plaintiff received limited treatment during the insured period does not render the evidence inadequate or ambiguous; rather, it further supports the ALJ's finding that Plaintiff was not disabled. Accordingly, the ALJ had no obligation to obtain a medical expert.

Finally, Plaintiff argues that there is no record evidence showing that Plaintiff could stand/walk for six hours out of an eight hour work day at the time her insured status expired. The ALJ, however, found that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) which does not specifically quantify the number of hours of standing or walking that are required.(Tr. 385).[7] Even assuming that the amount of standing/walking was required, substantial evidence supports the ALJ's RFC finding. To the extent Plaintiff contends that fibromyalgia and degenerative joint disease limited her ability to stand, substantial evidence supports the ALJ's conclusion that these conditions caused only intermittent acute symptoms through June 30, 2001. Moreover, as discussed below, the ALJ specifically considered Plaintiff's right foot fracture in her RFC determination, and concluded that it did not

---

[7] 20 C.F.R. 404.1567(b) provides in pertinent part, " . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

result in any functional limitations during the period of insurability.  Accordingly, the ALJ's RFC determination is supported by substantial record evidence.

### B.     The ALJ properly considered Plaintiff's right foot fracture

Plaintiff argues that the ALJ failed to consider the effect of Plaintiff's foot impairment on her RFC because the ALJ thought it would not last twelve months. This argument is without merit.

Although the ALJ found that Plaintiff's foot fracture did not last 12 months or more (Tr. 385, 387, 388), the ALJ nevertheless, considered Plaintiff's right foot fracture in her RFC analysis.  The ALJ noted that Plaintiff broke her right foot in May 2001 and that it healed without surgery. (Tr. 387).  The ALJ also noted that after her date last insured, Plaintiff developed other right foot symptoms in late 2001/early 2002; underwent surgery to correct a right foot bunion deformity and a right foot hammertoe deformity in February 2002; and subsequently developed neuromas, for which she underwent injections and surgeries in 2004 and 2005.   (Tr. 387).

On May 29, 2001, Plaintiff was seen by podiatrist, Dr. Rotstein for a fracture of her right fifth metatarsal. (Tr. 214-16).  Dr. Rotstein found no need for surgery and applied a below the knee cast.  (Tr. 216).  On June 21, 2001, Plaintiff reported feeling better and Dr. Rotstein noted that consolidation was occurring at the fracture site. (Tr. 213). On July 12, 2001, Dr. Rotstein noted that the majority of the fracture was consolidating very well; he applied a below the knee soft cast; and directed Plaintiff to wear a surgical shoe and increase her activity level in a very slow

incremental fashion. (Tr. 212). Plaintiff did not see Dr. Rotstein for more than six months. On January 31, 2002 she presented with a right foot bunion deformity and hammertoe deformity. (Tr. 202-09, 210-11). Dr. Rotstein did not note any relationship between these conditions and Plaintiff's earlier fracture. Moreover, while Plaintiff reported her fracture to Dr. Panzer on June 13, 2001 (Tr. 127), she did not mention any other issues with her feet at subsequent appointments during 2001 and 2002. (Tr. 121-26).

As such, substantial evidence supports the ALJ's conclusion that Plaintiff's foot fracture did not result in any functional limitations prior to the expiration of Plaintiff's insured status.

## V. Conclusion

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida, on the 22nd of March, 2011.

THOMAS E. MORRIS
United States Magistrate Judge

Copies to:
    All Counsel